UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL EUGENE HARNISH,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL MARTELL, Warden,<br><br>Respondent. | Case No. 2:18-cv-03600-RGK-KES<br><br>ORDER TO SHOW CAUSE WHY PETITION SHOULD NOT BE DISMISSED AS UNTIMELY |

**I.**

**INTRODUCTION**

On March 29, 2018, Darryl Eugene Harnish ("Petitioner") constructively filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"). (Dkt. 1 at 20 [signature date].[1]) Petitioner is a

---

[1] All page citations are to the CM/ECF pagination. "Under the mailbox rule, a prisoner's pro se habeas petition is deemed filed when he hands it over to prison authorities for mailing to the relevant court." Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citation omitted). A court generally deems a habeas petition filed on the day it is signed, Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010), because it assumes the petitioner turned the petition over to prison authorities for mailing that day. Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) (per curiam, as amended). A petitioner is not entitled to the benefit of the mailbox rule, however, if he gave the petition to prison authorities after the statute

1

California state prisoner currently serving a sentence of 85 years to life after a jury convicted him of first degree murder, attempted murder of a peace officer, and assault on a peace officer with a semi-automatic firearm. People v. Harnish, 2016 Cal. App. Unpub. LEXIS 5336, at *1 (July 20, 2016).

Pursuant to Rule 4 of the Rules Governing § 2254 Petitions, the Court may raise sua sponte the issue of whether the petition is timely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Day v. McDonough, 547 U.S. 198, 202 (2006); Nardi v. Stewart, 354 F.3d 1134, 1141 (9th Cir. 2004). The Court therefore orders Petitioner to show cause in writing on or before **June 4, 2018**, why the Petition should not be dismissed as untimely.

## II.

## FACTUAL BACKGROUND

The underlying facts are taken from the unpublished California Court of Appeal decision on Petitioner's direct appeal. People v. Harnish, No. B263412, 2016 Cal. App. Unpub. LEXIS 5336 (July 20, 2016). Unless rebutted by clear and convincing evidence, these facts may be presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254(e)(1).

*Prosecution Evidence*

*On April 19, 2012, around midnight, Darryl Brown and Terry Alexander were at a bus stop bench at Pacific Avenue and Pacific Coast Highway in Long Beach. From across the street at a Mobil gas station, defendant (who is Caucasian) yelled racial slurs and said, "I'll kill all you motherfuckers." Alexander rode his bicycle across the street. As Alexander approached, defendant pulled out a gun and shot him twice. Alexander, fatally wounded, fell near the gas*

---

of limitations period had already expired. Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003). For purposes of this order, the Court assumes (without deciding) that Petitioner is entitled to the benefit of the mailbox rule.

*pumps.*

*Long Beach Police Officer Arthur Vega heard the gunshots and drove to the scene. He saw Alexander's wounded body at the gas station and defendant walking north on Pacific Avenue. Officer Vega drove toward defendant, and shined his search light at him. Defendant then pulled out a gun and fired twice, striking the hood and windshield of the patrol car. Defendant continued to walk out of Officer Vega's sight.*

*A witness, Silverio Perez, observed defendant change magazines in his firearm. Officer Vega and a back-up officer, Officer Diaz, located defendant and ordered him to stop and put his hands up. Defendant put his gun down for a moment, but then picked it up and ran. As the officers pursued, defendant turned toward the officers. They fired, wounding defendant, and he fell to the ground. In a subsequent search, police found a .45 caliber semi-automatic handgun in defendant's possession, and an extra magazine in his pocket. Cartridge cases found at the murder scene and the scene of the shooting at Officer Vega, as well as bullet fragments from Officer Vega's car, were matched by a ballistics expert to defendant's firearm.*

*Defense*

*Defendant, who was 67 years old, testified that he lived in the area of the Mobil station, had experienced several incidents in Long Beach in which he was threatened by other people on the street, and that he carried a handgun for protection. On the night of the shooting, he was returning home from buying a half-pint of rum when Alexander rode up on his bicycle. From perhaps 18 feet away, Alexander said that he was going to kick defendant's "mother-fucking ass." Believing he was about to be robbed or beaten, defendant pulled out his gun and shot Alexander twice. Defendant panicked and started walking home. When Officer Vega arrived, defendant fired at the police car (not the officer) so as to distract the officer and escape for home. [Defendant] continued to walk, trying to*

3

*get home, and was shot three times.*

*Defendant presented evidence that when Alexander was shot, his blood alcohol level was approximately .25 percent. In January 2012, Alexander had been arrested for being drunk in public after a fight was reported near the Mobil station that was the scene of his murder.*

*According to Ivan Alejandro Torres Cota, the manager of a pizzeria across the street from the Mobil station, Alexander was homeless and slept behind the pizzeria. On March 26, 2012, Alexander demanded free food from the pizzeria's drive up window. When the Cota refused, Alexander said, "I'm going to fuck you up," tried to go through the window, and kicked the rear door. When Cota confronted him, Alexander pushed him, and Cota pepper-sprayed Alexander.*

*In a search of defendant's residence, no racist literature was found. Two African-American acquaintances of defendant, Jerry Melvin and Adrian Phillips, testified that defendant never exhibited any racial animus.*

Harnish, 2016 Cal. App. Unpub. LEXIS 5336 at *3-4.

## III.

## PROCEDURAL HISTORY

In February 2015, in Los Angeles County Superior Court case number NA092007, a jury convicted Petitioner of first degree murder, attempted murder of a peace officer, and assault on a peace officer with a semi-automatic firearm. The jury found true in each count certain firearm use allegations. Id. at *1. The trial court sentenced defendant to a total term of 85 years to life. Id.

Petitioner appealed from the judgment of conviction, raising one issue: that the prosecutor committed misconduct in his rebuttal closing argument by saying that this was not a capital case. Id. According to Petitioner, the prosecutor's comment, while accurate, "undermined the jury's sense of responsibility[.]" Id. at *6. On July 20, 2016, the California Court of appeal issued a decision concluding "that the claim was forfeited by a failure to object, and, in the alternative, is

meritless." Id. at *1-2.

Petitioner sought review in the California Supreme Court. On October 12, 2016, that court denied his petition for review. People v. Harnish, No. S236925, 2016 Cal. LEXIS 8577, at *1 (Oct. 12, 2016). Petitioner does not appear to have filed any habeas petitions in the state courts. See California Courts, Appellate Courts Case Information, http://appellatecases.courtinfo.ca.gov/.

Petitioner subsequently received a letter from appellate counsel advising that if he did not file a Petition for Writ of Certiorari, then his federal habeas petition would be due on January 10, 2018. (Dkt. 1 at 6.)

Petitioner acknowledges that he did not file his federal petition on or before this due date, but instead missed it by approximately 90 days, constructively filing his federal Petition on March 29, 2018. (Id.)[2] Petitioner argues that he is entitled to sufficient equitable tolling to render his Petition timely. (Id.)

## IV.

## CLAIMS

In his federal Petition, Petitioner raises the same claim of prosecutorial misconduct that he raised on direct appeal. (Id. at 11.) He says that this is "the single issue the court is being asked to review." (Id. at 13.)

Petitioner also prays, however, to be allowed "to exhaust the unexhausted claims which were not raised by either the trial or appellate attorneys" and asks for a stay. (Id. at 11, 14.) While the Petition does not list each of Petitioner's grounds for relief clearly, Petitioner does assert a new claim related to his old claim, i.e., that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct. (Id. at 12-13.) He also argues that trial counsel was ineffective for failing to present his evidence of self-defense more persuasively. (Id. at 15.)

---

[2] The Petition was initially filed in the Eastern District of California and then transferred to this Court. (Dkt. 4.)

5

Petitioner also appears to argue that appellate counsel was ineffective for raising "only one legal issue," and one arguably forfeited by trial counsel's failure to object. (Id. at 14-15, 18.) He also argues that there was insufficient evidence of his intent to kill (because he acted in self-defense) and that his sentence was "excessive." (Id. at 14-15.) Finally, he argues that the "multiple gun enhancements were 'stacked' in violation of case law precedent." (Id. at 15.)

## V.

## DISCUSSION

### A. The AEDPA's Statute of Limitations.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner ordinarily has one year from the date his conviction becomes final to file a federal habeas corpus petition. 28 U.S.C. § 2244(d)(1)(A). The period of limitation is tolled while a properly filed state post-conviction petition is pending. 28 U.S.C. § 2244(d)(2).

Here, the California Supreme Court denied the petition for review on October 12, 2016. Thus, Petitioner's judgment became final at the expiration of the time in which to seek review in the United States Supreme Court, i.e., ninety days from issuance of the denial, on January 10, 2017. See Jimenez v. Quarterman, 555 U.S. 113, 119 (2009); U.S. Sup. Ct. R. 13. Absent tolling, Petitioner therefore had until January 10, 2018, to file his federal petition.

### B. Equitable Tolling.

The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. Holland v. Florida, 560 U.S. 631, 645 (2010). To qualify, a petitioner must demonstrate: (1) that he has been pursuing his rights diligently, and (2) that some "extraordinary circumstance" stood in his way that prevented him from timely filing. Id. at 649 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The "extraordinary circumstance" requirement "suggests that an external force must cause the untimeliness, rather than … merely oversight, miscalculation

6

or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling." Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)) (internal quotation marks omitted). "The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, … and that the extraordinary circumstances made it impossible to file a petition on time[.]" Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotations, brackets, and citations omitted). A litigant bears a heavy burden to establish that equitable tolling applies, because "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation omitted).

Here, Petitioner argues that he should receive equitable tolling because of his medical condition. He suffered "catastrophic injuries in 2012" that "incapacitated" him because he was shot several times at the time of his arrest. (Dkt. 1 at 6.) See also Harnish, 2016 Cal. App. Unpub. LEXIS 5336 at *3 (describing how officers pursuing Petitioner "fired, wounding" Petitioner, who "fell to the ground"). The bullets injured his spine, and he eventually had both legs amputated. (Dkt. 1 at 7; see also id. at 42-46 [medical records from April 2012 and December 2015].) On December 29, 2015, Petitioner was admitted to the hospital suffering various conditions, including osteomyelitis, described as an "extremely painful and inflammatory disease of the bone, often of bacterial origin …." (Id. at 7, 46.)

Petitioner also argues that he did not have assistance from counsel after the California Supreme Court denied review. (Id. at 7)

Regarding Petitioner's medical condition, Petitioner has not explained how his medical condition affected his ability to prepare his federal Petition. For example, was he confined to a hospital without access to legal materials, or was he unconscious or unable to write? If so, when and for how long? The information

provided by Plaintiff concerns only 2012 and 2015.  Petitioner's response to the OSC should focus on his condition during the AEDPA limitations period, i.e., from October 2016 through January 2018.

Regarding lack of counsel, Petitioner explains that his appellate attorney advised him in October 2016 that Petitioner would need to file a federal petition by January 10, 2018.  (Dkt. 1 at 6.)  Most habeas petitioners are self-represented, and the lack of counsel does not typically constitute an "extraordinary circumstance" that would create equitable tolling.  Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006) ("pro se status, on its own, is not enough to warrant equitable tolling").

## C. **Actual Innocence.**

There is also an equitable exception to the AEDPA's statute of limitations for prisoners who present new, reliable evidence of actual innocence.  Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (citing Schlup v. Delo, 513 U.S. 298 (1995)); see also McQuiggin v. Perkins, 569 U.S. 383 (2013).  Specifically, a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  Lee, 653 F.3d at 938 (quoting Schlup, 513 U.S. at 327).

Petitioner argues that he is actually innocent because there is "no evidence in either the pre-trial or trial transcripts which supports the prosecution's allegations that the alleged acts were premeditated."  (Dkt. 1 at 15, 19.)  This is not new, reliable evidence of actual innocence.  Petitioner does not dispute that he shot Alexander and fired at the police car.  At best, Petitioner appears to be arguing that if his lawyer had devoted more skill or resources to Petitioner's defense, then he would have presented Petitioner's defense of self-defense more persuasively.  This is not a claim of actual innocence for purposes of invoking the equitable exception to AEDPA's statute of limitations, because it relies solely on the evidence presented at trial, rather than on new evidence.  See Schlup, 513 U.S. at 324 (requiring the "petitioner to support his allegations of constitutional error with *new*

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was *not presented at trial*") (emphasis added); see also Hageman v. Hill, 314 F. App'x 996, 998 (9th Cir. 2009) ("The affidavit … shows that the evidence produced at Hageman's trial may have been legally insufficient; it presents no evidence of Hageman's actual innocence.").

## VI.
## CONCLUSION

**On or before June 4, 2018,** Petitioner shall therefore show cause in writing why his Petition should not be dismissed as untimely.

DATED: May 02, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge